WITTMAN *v.* HARROD, et al.

No. 42654          May 6, 1963          152 So. 2d 717

*Morse & Morse,* Gulfport, for appellant.

*Rae Bryant, Boyce Holleman,* Gulfport, for appellee.

ARRINGTON, J.

John J. Wittmann, plaintiff below, appeals from a judgment of the Circuit Court of Harrison County directing a verdict for James Howard Harrod and the Western Casualty & Surety Company.

The record discloses that the appellant was Sheriff and Tax Collector of Harrison County from January 2, 1956 to January 4, 1960, and that he appointed the appellee, James Howard Harrod, as chief deputy sheriff for the collection of taxes in Harrison County during his term of office. The appellant charged that Harrod failed, neglected and refused to discharge his duties as chief deputy for the collection of taxes, and as a result a third party, deputy sheriff, embezzled funds from the sheriff in the amount of $13,000. The Western Casualty & Surety Company, as surety for the defaulting deputy sheriff, paid $5,000, the amount of the bond, leaving a balance of approximately $8,000. Then appellant made demand on Harrod and his surety for this amount, which they refused to pay. Appellant paid the shortage and brought this suit for reimbursement.

Harrod's bond was made in the amount of $10,000, and provided in part as follows:

"NOW, THEREFORE, the condition of the above obligation is such that if the above Principal shall well and faithfully perform all the duties of his said office as required by law, then this obligation to be null and

void; otherwise to be and remain in full force and virtue.''

Harrod was in charge of all taxes collected, ad valorem, automobile tags, and all monies collected with the exception of heavy truck tags. Harrod collected all tax receipts from the deputy collectors, and each collector filed with Harrod a daily report of collection, which collections were deposited by him to Wittmann's account. It is further alleged that Harrod made up the settlement checks each month and submitted them to Wittman for his signature. Wittmann did not know of the shortage until after his term of office had expired. He then employed auditors to make an audit of his accounts to determine how the shortage occurred. As a result of the audit, it was apparent that the deputy in charge of car tag sales falsified her daily reports. The daily report of taxes collected contained the serial number of each tag, the amount of taxes collected and a tabulation of the sales for that day stapled to the report. The report, together with the cash and checks, were turned over to Harrod each day.

Appellant testified that the deputy collected the correct amount of tax, but falsified her daily report to show that collections were less and kept the difference. The declaration further alleged that appellee Harrod was responsible for supervising all personnel in the office of the tax collector, was responsible for checking the daily, weekly, monthly and annual reports, and all of the books, records, and accounts of the employees in the office of the tax collector; and was responsible for the conduct of all employees of the tax collector.

It was further alleged that there was a deputy collector who was obligated and charged with the duty of selling license tags as required by law; and that this deputy began to appropriate funds which should have been credited to the account of the tax collector to her own personal use; and had the defendant Harrod

properly discharged the duties of his office the shortages resulting from the misappropriation of funds could easily have been ascertained. The declaration further charged that Harrod failed, refused and neglected to well and faithfully perform the duties of his office as required by law; that said failure, refusal, and neglect was the proximate cause of said shortages; and had the said Harrod properly, well and faithfully discharged the duties fixed upon him by law, said shortages would have been ascertained at a very early date and would have been materially diminished. The record affirmatively shows that the appellee Harrod deposited all the monies coming into his hands.

Thus the sole question presented here is whether or not a deputy sheriff and his surety are liable to the sheriff for embezzlement of funds by another deputy sheriff appointed by the sheriff.

The appellant contends that the appellees are liable under Sec. 4237, Miss. Code of 1942, which is as follows:

"The sheriff shall have the same remedy and judgment against his deputies and their sureties, for failing to pay money received on executions or other process to the sheriff, or to the party to whom the same is payable, or for any other act or default in office, as the creditor at whose suit such writ issued may have against the sheriff."

Appellant further contends that this section should be read in connection with Sec. 4235, Miss. Code of 1942, which is as follows:

"Every sheriff shall have power to appoint one or more deputies, and to remove them at pleasure; every such appointment to be in writing; and such deputies shall have authority to do all the acts and duties enjoined upon their principals. Every deputy sheriff, except such as may be appointed to do a particular act only, before he enters on the duties of office, shall take and subscribe an oath faithfully to execute the office

of deputy sheriff, according to the best of his skill and judgment; and the appointment, with the certificate of the oath, shall be filed and preserved in the office of the clerk of the board of supervisors. All sheriffs shall be liable for the acts of their deputies, and for money collected by them. . . . .''

Appellant contends that under these statutes the appellees are liable. Code Sec. 4235 provides that the deputy shall make oath ''faithfully to execute the office of deputy sheriff, according to the best of his skill and judgment.'' The surety bond was conditioned upon the proposition that the deputy ''shall well and faithfully perform all the duties of his said office as required by law.''

The main contention of appellant is that Harrod should have discovered this embezzlement and his failure to do so makes him liable for the funds that were taken. In case of Chicago & Alton R.R. Co. v. Higgins, et al., 58 Ill. 128, is very similar to the instant case. There the condition of the bond was as follows:

''The condition of the above obligation is such, that, whereas, the above bounden Virginius E. Higgins hath been duly appointed freight agent at Jacksonville station, on the Jacksonville division of the Chicago and Alton Railroad Company: Now, if the above bound Virginius E. Higgins shall well and truly perform and execute the duties of such freight agent of said Chicago and Alton Railroad Company in all things, and shall render to said company, or its agent or attorney, a just and true account of all sums of money, goods, chattels and other things which shall come into his hands, charge or possession, as such agent of said company, and shall and do pay over and deliver to said company, its agent or attorney, all balances or sums of money, goods, chattels and other things which shall at any time appear to be in his hands, and due by him to said company, and shall pay and deliver over to his successor in office,

or any other person duly authorized to receive the same, all balances or sums of money, goods, chattels and other things, which shall appear to be in his possession and due by him to said company, then the above obligation to be void, else to remain in full force and effect.''

In this case Higgins was the freight agent for the railroad company and the suit was for $1121.17 which the railroad company charged Higgins failed to pay over to the company. It was also shown that a sub-agent, Neely, was appointed by the railroad company, and not by Higgins, and that Neely received the amount sued for, retained it, and that it never came into the hands of Higgins. The Court there said:

''The condition is, to render a true account of all sums of money, goods, chattels and other things, which shall come into his hands, charge or possession as such agent, and to pay over all balances or sums of money, goods, chattels and other things, which shall at any time appear to be in his hands, and due by him to said company. The breach is, for not paying over money — the condition in this respect is, to pay over such money as shall be in Higgins' hands, and be due by him — it respects his own conduct, and does not point to the conduct of any subordinate agent under him.

''Sureties are involved here. The undertaking of a surety is to receive a strict interpretation. His liability is not to be extended by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. . . . . . . . . .

''If this sum of money was received by Neely under such circumstances, and never came into the hands of Higgins, but was retained by Neely, we do not think a liability for it is fairly embraced within the condition of this bond.

''The engagement of these sureties was to become responsible for any misconduct of Higgins, and not for

the default of any other agent of the company appointed by itself, although in the same freight department, and subordinate to Higgins. Such a responsibility does not seem to come within the fair scope of the terms of the sureties' engagement.

"It can not fairly be considered as having been within their contemplation.

"To have rendered them so responsible, for the misconduct of any other agent of the company, the terms of the condition should have extended to other agents, and not have been confined to Higgins, or they should have expressly assumed a liability for all moneys received in the freight department."

In the case of Alexander v. Fidelity and Casualty Co., et al, 232 Miss. 629, 100 So. 2d 347, this Court approved the general rule as to the liability of sureties, as follows:

"In Stearns Law of Suretyship, supra, p. 13, deducing the rule to be applied to surety agreements, it is said: 'The terms of the contract are given their ordinary and usual meaning, and nothing is to be read into the contract that is not implicit in the language used by the parties. The obligation of the surety should neither be reduced nor extended by judicial construction.' "

(Hn 1) We are of the opinion that the circuit court was correct in directing a verdict for appellees and it follows that the judgment is affirmed.

Affirmed.

*Lee, P.J., and McElroy, Rodgers and Jones, JJ.,* concur.